UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, vs. FRANK EDWARD ADAMS, Defendant. | 3:18-CR-30147-RAL OPINION AND ORDER DENYING COMPASSIONATE RELEASE |

Defendant Frank Edward Adams filed a pro se motion for compassionate release. Doc. 215. Pursuant to the procedure established by Amended Standing Order 20-06, his case was categorized as low priority, Doc. 217, and the Federal Public Defenders for the Districts of South Dakota and North Dakota chose not to supplement Adams' motion. Adams then filed several other motions. Doc. 216, 220–21, 228, 232, 234, 237, 244. Motions relating to the extension of deadlines were granted, but other motions relating to recusal, compelling of discovery, setting hearings, and the appointment of counsel were denied. Docs. 219, 222, 233, 235–36, 243. The government opposes the motion for compassionate release. Doc. 240. For the following reasons, this Court denies Adams' motion for compassionate release.

I.  **Factual Background**

On August 22, 2019, after a jury trial, Adams was found guilty of Conspiracy to Distribute the Controlled Substance of methamphetamine in the amount of 500 grams or more in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A). Doc. 128. On November 25, 2019, the

1

undersigned judge sentenced Adams to 360 months imprisonment, seven years supervised release, and to pay $100 in a special assessment. Doc. 164. The United States Court of Appeals for the Eighth Circuit affirmed this conviction and sentence on appeal. Docs. 186–87.

Adams' conviction stemmed from a conspiracy to distribute methamphetamine on the Crow Creek Indian Reservation and to a lesser extent the Lower Brule Sioux Tribe Indian Reservation in South Dakota between late 2014 and November 14, 2018. Doc. 150 ¶¶ 6–18. Adams lived in St. Paul, Minnesota, and traveled to central South Dakota with methamphetamine as part of a conspiracy commencing on or about December 1, 2015, and ending on November 14, 2018, where he knowingly and intentionally, combined, conspired, confederated, and agreed with persons to distribute and possess with the intent to distribute 500 grams of methamphetamine. Id. ¶¶ 2, 6–18. The testimony at Adams' jury trial and other information in the presentence investigation report establish that Adams supplied at least 4.6 kilograms of methamphetamine as part of the conspiracy. Id. ¶ 19.

Under the sentencing guidelines, Adams' total offense level for conspiracy to distribute was 40, and he fell into criminal history category IV. Id. ¶ 95. Adams was in criminal history category IV due to previous convictions for various drug offenses, assaults, firearm crimes, witness tampering, and traffic offenses. Id. ¶¶ 36–77. Adams' advisory guideline range was 360 months to life imprisonment. Id. ¶ 95. This Court then sentenced Adams' to the lowest possible guideline range sentence of 360 months of imprisonment. Doc. 164.

Adams is currently incarcerated at the USP Hazelton in Bruceton Mills, West Virginia. Inmate Locator, Fed. Bureau Prisons, https://www.bop.gov/inmateloc/ (last visited April 5, 2023) (Register Number: 08011-041). Adams is projected to be released June 12, 2044. Id. Currently, Adams is 48 years old. Id.

In early 2020, a novel coronavirus, COVID-19, quickly spread across the United States and infiltrated correctional institutions. The Centers for Disease Control and Prevention (CDC) has identified certain underlying health conditions that put individuals at higher risk for a severe form of the illness if they contract the disease. Among those at higher risk are individuals with cancer, tuberculosis, obesity, serious heart conditions, sickle cell disease, Type 2 diabetes, as well as several other conditions. See People with Certain Medical Conditions, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Feb. 10, 2023).

Adams filed a motion for compassionate release arguing that the lack of health care and the implementation of cruel and unusual punishment at USP Hazelton constitute extraordinary and compelling reasons to justify a compassionate release. Doc. 215. Adams provides few details to support his allegations and makes no mention of his health status or circumstances relating to his family's wellbeing. Id. Adams provides no plan if he were to be released. Id. Adams made no mention of exhaustion in his original motion but did file a supplement acknowledging not fully exhausting his administrative remedies. Doc. 239. In the supplement Adams states he has "not yet completed Fileing [sic] all His avenues of Exhausting the Administrative Remedy process as of now the warden has denied the defendant." Id.; Doc. 241 at 1 ("[Adams'] Remedies hasn't been exhausted at the prison level see exhibit docet [sic] motion file by defendant to the court explaining facts on how long each Remedy will take . . . ."). But see Doc. 244 ("I must file at the prison warden by fileing [sic] Administrative Remedy's. I file seval [sic] motions to this court stating thats the route I have taken . . . .") (signed March 14, 2023, filed March 30, 2023).

In Adams' reply to the Government's memorandum in opposition of his motion, he points to other matters not related to his initial motion. Doc. 241. Adams primarily presents issues related

3

to his pending § 2255 case[1] and argues that the sentence imposed was illegal, rather than focusing on what, if any, extraordinary and compelling circumstances justify compassionate release. Id. In fact, Adams himself seems to believe his compassionate release motion involves issues raised in his § 2255 motion, as his conclusion in the reply states "But yet fail to address the 2255 grounds of factual issues on its face inside the 2255 . . . . Upon prosecution failing to address and respond to the 2255 motion docet [sic] on the record at the South Dakota District Court level." Id. at 7. As such, Adams' arguments in his reply brief have little bearing on his compassionate release motion and instead focus on Adams' § 2255 case.

## II.   Discussion

In general, federal sentences are considered final judgments because a federal court ordinarily "may not modify a term of imprisonment once it has been imposed." 18 U.S.C.A. § 3582(c); United States v. Hodgin, No. 4:15-CR-40110-02-KES, 2021 WL 928179, at *1 (D.S.D. Mar. 11, 2021). However, in 2018, Congress passed the First Step Act (FSA), Pub. L. No. 115-391, 132 Stat. 5194 (2018), which amended 18 U.S.C. § 3582(c)(1)(A) to permit incarcerated defendants to file motions directly with the court seeking compassionate release once they have exhausted their administrative remedies. United States v. Rodd, 966 F.3d 740, 744 (8th Cir. 2020). "Exhaustion occurs at the earlier of either (1) when the prisoner has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on his behalf or (2) the lapse of 30 days from the receipt of such a request by the warden of the prisoner's facility." United States v. Houck, 2 F.4th 1082, 1083–84 (8th Cir. 2021) (cleaned up and citations omitted). Full exhaustion is required before the motion can be filed. Id. at 1083.

---

[1] Adams v. United States, 3:22-CV-3015-RAL (D.S.D. 2022).

Adams has admitted that he has not fully exhausted his administrative remedies. Docs. 239, 241. While Adams explains that the process of exhaustion is taking him a long time, the FSA requires full exhaustion before the motion is filed and being in the process of exhaustion is not sufficient. It is unclear whether Adams has now filed a request for compassionate release with his warden based on his most recent filing. Doc. 244. Even if Adams did finally submit such a request to the warden to begin the exhaustion process, there is no indication when that action was taken. The only mention of proper exhaustion came to the notice of this Court on March 20, 2023. Id. Based on the signature on the most recent filing, and taking the document in the light most favorable to Adams as a pro se litigant, the filing shows March 14, 2023, as the earliest possible date the request could have been made to the warden. Regardless, thirty days has not yet passed. As such, exhaustion is not yet completed through this avenue either. The failure to fully and properly exhaust on its own is enough for this Court to deny Adams' motion for compassionate release. However, even if Adams had fully and properly exhausted, his arguments do not establish extraordinary or compelling circumstances to release him.

"Compassionate release provides a narrow path for defendants with 'extraordinary and compelling reasons' to leave prison early." Hodgin, 2021 WL 928179, at *1 (citing 18 U.S.C. § 3582(c)(1)(A)(i)). "It is the defendant's burden to establish that he warrants a [18 U.S.C.] § 3582(c) reduction." United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016). When evaluating a compassionate release petition, courts consider the sentencing factors in 18 U.S.C. § 3553(a) and must ensure any potential reduction is consistent with the policy statements issued by the Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A); see Hodgin, 2021 WL 928179, at *1. In addition to the advisory guideline range, a court under 18 U.S.C. § 3553(a) must consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

5

> (2) the need for the sentence imposed--
>
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> >
> > (B) to afford adequate deterrence to criminal conduct;
> >
> > (C) to protect the public from further crimes of the defendant; and
> >
> > (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available[.]

Adams' guideline range was 360 months to life imprisonment based on his total offense level of 40 and criminal history category of IV. Doc. 150 ¶ 95. This Court sentenced Adams to 360 months, the low end of his guideline range. Doc. 164. Adams' offense was serious. Adams distributed methamphetamine on the Crow Creek and Lower Brule Indian Reservations for years and was likely responsible for bringing over 4.6 kilograms of methamphetamine to reservation communities. Doc. 150 ¶ 19. Adams has a serious and lengthy criminal history replete with drug offenses, witness tampering, assaults, and firearm crimes. Id. ¶¶ 36–77. The sentence imposed is long but reflected the seriousness of the offense, promoted respect for the law, provided just punishment, deterred such conduct, and protected the public.

The Sentencing Commission's policy statement, which was adopted before the FSA was passed, demands "extraordinary and compelling reasons" to warrant a sentence reduction, as well as requiring that the defendant not pose a danger to the safety of others. Hodgin, 2021 WL 928179, at *2 (citing USSG § 1B1.13(1)-(2) (Nov. 2018)). Yet Congress has not defined what constitutes "extraordinary and compelling reasons." See 28 U.S.C. § 994(t). "The Sentencing Commission was directed to describe what should be considered extraordinary and compelling reasons and fashion 'the criteria to be applied and a list of specific examples.'" Hodgin, 2021 WL 928179, at

*2 (quoting 28 U.S.C. § 994(t)). The Sentencing Commission characterized "extraordinary and compelling reasons" as pertaining to (1) the medical condition of the defendant, (2) time served in combination with advanced age and deteriorating health conditions, (3) compelling family circumstances, and (4) a catch-all category of "extraordinary and compelling reason[s] other than, or in combination with, the reasons described" previously as determined by the Director of the Bureau of Prisons (BOP). USSG § 1B1.13, cmt. n.1(A)–(D). Extraordinary and compelling reasons are further defined within each subset. Id. For example, a medical condition must affect the ability of the defendant to care for themself within the correctional facility or be a terminal illness. USSG § 1B1.13, cmt. n.1(A). Similarly, compelling family circumstances can mean "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children." USSG § 1B1.13, cmt. n.1(C)(i).

Adams has not even served a full 60 months of his 360-month sentence. Adams' several allegations of extraordinary and compelling circumstances are vague at best and the allegations he does make are entirely without factual support. Nevertheless, this Court will analyze each possible basis for asserting extraordinary and compelling reasons that the Sentencing Commission articulates. First, while Adams does have chronic health conditions, none are terminal or serious enough to affect his ability to care for himself within the prison. See USSG § 1B1.13, cmt. n.1(A)(i). Next, Adams is only 48 years old, so his age is not a compelling factor. See USSG § 1B1.13, cmt. n.1(B). Third, Adams' presentence investigation report reveals he is not legally married and does not mention the age of his children; regardless, Adams makes no mention of such circumstances in his motion. See USSG § 1B1.13, cmt. n.1(C)(i). Thus, Adams' petition, to justify granting, must fall under the final catch-all provision.

While Adams' makes no specific mention of COVID, he does allege that the prison is "illegally not providing for mental and physical health" in his compassionate release motion. "[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." United States v. Saenz, 2020 WL 4347273, at *5 (D.S.D. July 29, 2020) (cleaned up and citations omitted). Adams has been diagnosed with hypertension, hyperlipidemia, and Type 2 diabetes. Doc. 218 at 2. Hypertension and Type 2 diabetes are both conditions that puts one at risk for a more serious form of COVID-19 if infected. People with Certain Medical Conditions, supra. However, it appears from Adams' medical records that he has refused treatment for his ailments or been inconsistent when taking his medications, though he did agree to go back onto medication for his high blood pressure in April 2022. Doc. 218 at 1–3, 10, 19. Adams has also been vaccinated for and previously infected with COVID-19. Id. at 21, 193. This Court cannot conclude that Adams' diabetes and hypertension threatens his life at USP Hazelton, especially given the precautions put in place by the BOP to protect him and his fellow inmates. See COVID-19 Modified Operations Plan & Matrix, Fed. Bureau Prisons, https://www.bop.gov/coronavirus/covid19_modified_operations_guide.jsp (last visited Apr. 5, 2023). Further, there are no active cases of COVID in USP Hazelton at this time, Adams has been vaccinated, and has recovered from COVID without significant complications. COVID-19: Coronavirus, Fed. Bureau Prisons, https://www.bop.gov/coronavirus/ (last updated Apr. 5, 2023); Doc. 218 at 21.

There is no evidence showing USP Hazleton has not provided medical or psychological care to Adams. In fact, the medical records provided are over 220 pages long. Doc. 218. A review

8

of the records indicates not only Adams' use of the medical treatment provided, but also his failure to appear for appointments and, at best, inconsistent use of his medications that the medical staff at the prison recommend for treating his chronic conditions. See generally id. Adams does claim he had a mental illness, Doc. 215, but provides no evidence of treatment being withheld. In fact, the medical records indicate that the staff instructed Adams on how to obtain mental health care. Doc. 218 at 85.

There is no evidence of cruel and unusual punishment based on the documents provided. The only statements related to these allegations are the assertions made by Adams that lack any factual development or support within the records received by the Court, reading only "FBO.P illegally not providing mental and physical Health; MD. PHD. Psyd; illegally Acting as Correctional offiecers [sic] punishment [sic] cruel and un usual con Filick, of Interest Ethical violations; trying to kill me, old psychological pain war fare" and claims for denial of access to the compassionate release remedy form and to "PS 5050,80 IBUSE 35B2." Doc. 215. However, none of these allegations are supported in the documents submitted. Doc. 215, 218. A review of Adams' administrative records shows that in this term of imprisonment, Adams has filed six complaints relating to the "unprofessional conduct of staff." Doc. 218 at 344–48. Only two of the six claims merited further investigation, but ultimately ended in the closure of the claim with an explanation. Id. at 344, 347. Adams did get treatment after an incident involving the use of force when he resisted being placed in restraints, but he denied any injuries and the medical staff mentioned only superficial abrasions around his wrists and ankles. Id. at 151–54. The date of treatment for the incident, September 20, 2021, corresponds with a date on Adams' disciplinary records indicating he was sanctioned for refusing to obey orders. Id. at 151–54, 222. The administrative portion of Adams' filings show he did not appeal this sanction. Id. at 344–47

(listing all remedies sought in the year 2021). However, these instances do not show that Adams has been subjected to cruel and unusual punishment. Rather Adams refused to obey orders causing staff to use minimal force that caused no injury to Adams. Id.

These matters do not constitute "extraordinary or compelling" circumstances to justify a compassionate release in this case. To Adams' credit he appears to be performing better during his current federal imprisonment with far fewer disciplinary incidents (in fact only one incident) than during his previous periods of federal incarceration. Id. at 222–27. Though Adams' conduct while in prison does seem to be improving, better behavior alone cannot justify compassionate release. For the reasons described above and because Adams failed to exhaust his remedies, this Court must deny his motion for compassionate release without prejudice to refiling once Adams exhausts his administrative remedies or thirty days after he submits a request for release to his warden.

### III.   Conclusion

For the reasons discussed above, it is hereby

ORDERED that Adams' Motion for Compassionate Release, Doc. 215, is denied.

DATED this __7th__ day of April, 2023.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE